SO ORDERED.

Dated: May 2, 2017

Daniel P. Collins, Chief Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | (Chapter 7 Cases) |
| DAVID WROBLEWSKI & ASSOCIATES LAW CENTER, P.C., and WROBLEWSKI & ASSOCIATES, P.C., | No: 2:13-bk-19856-DPC<br>　　　2:13-bk-19931-DPC<br>　　　(Consolidated) |
| Debtors. | No. 2:12-bk-12434-DPC<br>　　　2:13-bk-19857-DPC<br>　　　2:13-bk-19991-DPC<br>　　　(Jointly Administered) |
| Jointly Administered with:<br><br>PHILLIPS & ASSOCIATES LAW OFFICES, P.C.; WROBLEWSKI & ASSOCIATES LAW FIRM, P.C.; and DAVID WROBLEWSKI & ASSOCIATES LAW FIRM, P.C., | **ORDER HOLDING DAVID R. WROBLEWSKI IN CONTEMPT REGARDING MISUSE OF IOLTA TRUST FUNDS** |
| Debtors. | |
| This pleading applies to:<br>☐　　All Debtors<br>☒　　Specified Debtors<br><br>DAVID WROBLEWSKI & ASSOCIATES LAW CENTER, P.C. and WROBLEWSKI & ASSOCIATES, P.C. | **[NOT FOR PUBLICATION]** |

　　　　This matter came on for continued hearing on March 30, 2017, regarding the Order to Show Cause issued to David R. Wroblewski ("Wroblewski")[1] as to why he should not be held in contempt for failure to adequately explain the use of funds from Interest on

---

[1] Exhibit 1 attached to this Order is an index of the numerous parties and lawyers involved in these various proceedings.

Lawyers Trust Accounts ("IOLTA") controlled by him. The purpose of this Order is to provide a detailed recitation of the history of the IOLTA accounts related to the Wroblewski Law Firms and the disposition of such funds.

The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 157(b)(2).

After appropriate notice and hearing held on March 30, 2017, the Court makes the following findings:

**<u>Introduction</u>**

This Court first learned that Wroblewski was in possession of his former clients' funds when Michael P. Lane ("Lane"), attorney for chapter 7 trustee Lothar Goernitz ("Goernitz"), raised the matter at a hearing on December 17, 2013 (MP[2] 68). Lane expressed concern that these funds, totaling approximately $115,000, might not be property of the bankruptcy estates of David Wroblewski & Associates Law Center, P.C. ("DWA Law Center") and Wroblewski & Associates, P.C. ("WA"), but were being held in trust for Wroblewski's former clients. These former clients would be creditors of the Wroblewski Firms. Lane informed the Court that Goernitz did not have records indicating which Wroblewski clients were entitled to recovery or how much money they were entitled to receive from this pool of IOLTA funds. Goernitz wanted to have Wroblewski determine who was entitled to these funds and then obtain an order of this Court directing him to pay such funds to the rightful owners. (MP 68). On March 13, 2014, the Court ordered Wroblewski to not touch the IOLTA funds until further court order. On numerous occasions the Court ordered Wroblewski to provide a full accounting of the IOLTA funds controlled by him. For more than three years this Court attempted efforts to have the IOLTA funds paid to Wroblewski to Wroblewski's former clients. The Court ultimately learned that Wroblewski had misappropriated $2,536.50

---

[2] "MP" shall reference docket entries in the Miscellaneous Proceeding at Case No. 2:13-mp-00015-DPC.

on February 21, 2014, and looted approximately $100,000.00 of the IOLTA funds from October 16, 2015 through June 27, 2016.

**Background**

### I. The Wroblewski –Related Cases

The Office of the United States Trustee ("UST") established a miscellaneous adversary proceeding against Jeffrey Phillips ("Phillips") and Wroblewski on November 25, 2013 ("Miscellaneous Proceeding").

DWA Law Center filed a voluntary chapter 7 proceeding on November 14, 2013, at Case No. 2:13-bk-19856-DPC. Goernitz was appointed chapter 7 trustee for the bankruptcy estate of DWA Law Center.

Wroblewski & Associates Law Firm, P.C. ("WA Law Firm") filed a voluntary chapter 7 proceeding on November 14, 2013, at Case No. 2:13-bk-19857-DPC. Goernitz was appointed chapter 7 trustee for the bankruptcy estate of WA Law Firm.

WA filed a voluntary chapter 7 proceeding on November 15, 2013 at Case No. 2:13-bk-19931-DPC. S. William Manera ("Manera") was appointed chapter 7 trustee for the bankruptcy estate of WA.

David Wroblewski & Associates Law Firm, P.C. ("DWA Law Firm") filed a voluntary chapter 7 proceeding on November 18, 2013, at Case No. 2:13-bk-19991-DPC. Brian J. Mullen ("Mullen") was appointed chapter 7 trustee for the bankruptcy estate of DWA Law Firm.

DWA Law Center and WA bankruptcy cases were consolidated on March 31, 2014 ("Wroblewski Consolidated Cases") (DE 31)[3].

---

[3] "DE" shall reference docket entries in the lower numbered case in these two consolidated cases, i.e. 2:13-bk-19856-DPC.

Phillips & Associates Law Offices, P.C. ("PA") filed a voluntary chapter 7 proceeding on June 4, 2012, at Case No. 2:12-bk-12434-DPC.  Robert A. MacKenzie ("MacKenzie") was appointed chapter 7 trustee for the bankruptcy estate of PA.

The PA bankruptcy case was jointly administered with the Wroblewski Consolidated Cases on April 23, 2014 (DE 36).

The WA Law Firm and DWA Law Firm bankruptcy cases were jointly administered with the PA bankruptcy case and the Wroblewski Consolidated Cases on October 1, 2015 (DE 221).

DWA Law Center, WA Law Firm, WA, and DWA Law Firm are also collectively referred to as the ("Wroblewski Firms").

## II. History Concerning the Wroblewski Firms IOLTA Accounts

### April 25, 2013 Hearing[4]

The Court first became aware that Wroblewski was not properly representing his bankruptcy clients during an April 25, 2013 chapter 13 status hearing in the case of Pamela K. Smith ("Smith"), Case No. 2:11-bk-12650-DPC ("Smith Case").  The chapter 13 trustee, Russell Brown ("Brown"), issued a recommendation to Smith on April 2, 2012.  The Court granted Smith an extension of time until November 15, 2012, to respond to the recommendation.  Smith was represented by WA.  The trustee, having received no further communication from Smith's counsel, prepared a proposed stipulated order confirming chapter 13 plan ("SOC") and forwarded it to Smith on February 26, 2013.  Smith signed the SOC and returned it to Brown.  However, Smith subsequently contacted Brown's office and indicated her counsel had advised her not to proceed with the SOC.

---

[4] Smith Case, Docket 120.

Brown's office heard nothing further from Smith's counsel. Neither Wroblewski nor his associate Ronald Hoffbauer ("Hoffbauer") appeared at the April 25, 2013 status hearing. As a result, the Court issued an order to show cause ("1st OSC") directing Wroblewski and Hoffbauer to appear on May 29, 2013, and explain why the SOC had not been entered, why counsel had not been prosecuting the Smith chapter 13 case, and why appropriate sanctions should not be entered. (MP 3 and MP 4).

**May 29, 2013 Hearing[5]**

Wroblewski and Hoffbauer appeared at the May 29, 2013 hearing. The Court expressed concern about the administration of the Smith Case and other bankruptcy cases handled by the Wroblewski Firms. Wroblewski and Hoffbauer provided the Court with a detailed explanation of future steps they would implement to correct these problems.

**June 27, 2013 Hearing[6]**

At the June 27, 2013 continued hearing on the 1st OSC, Scott Lieske ("Lieske"), counsel for Brown, and Jessica Sabo ("Sabo"), counsel for chapter 13 trustee Edward J. Maney ("Maney"), advised the Court that the administration of chapter 13 cases by the Wroblewski Firms had not improved but, rather, had worsened. The Court asked Lieske and Sabo to speak with their clients and provide the Court with a proposal for sanctions against Wroblewski and his firms. While at a break in the proceedings, Lieske was approached by James Lee ("Lee"), counsel for the Arizona State Bar ("Bar"), at which time he informed Lieske that a Bar disciplinary hearing concerning Wroblewski was scheduled for July 1, 2013. One of the issues to be discussed in the Bar's disciplinary hearing was the approximately 800 chapter 7 cases where Wroblewski had accepted funds from clients but had not yet filed the chapter 7 cases. When the bankruptcy hearing reconvened, Brown proposed that the Court prohibit Wroblewski from taking any new

---

[5] Smith Case, Docket 57.
[6] Smith Case, Docket 60.

chapter 13 clients until the Wroblewski Firms' pending bankruptcy cases were appropriately handled. However, Brown also suggested that the Wroblewski Firms be allowed to file bankruptcy cases where they had already accepted retainers. Brown also requested that a list be provided to the Court identifying matters where retainers had been paid but bankruptcy cases not filed. Brown further proposed that, going forward, Wroblewski not be allowed to take any new chapter 13 clients until an application was filed detailing the financial and staffing resources available if the Wroblewski Firms were to take any new clients. Sabo informed the Court that Maney was in agreement with Brown's proposal. The Court also heard from Hoffbauer, and Wroblewski and a former associate of Wroblewski, Joshua S. Parilman ("Parilman"). (MP 11).

On July 15, 2013, the Court entered a stipulated order prohibiting Wroblewski and the Wroblewski Firms from accepting any new bankruptcy or financial workout clients without further order of the Court. (MP 18).

On August 29, 2013, the Court entered an order regarding Wroblewski's management of chapter 13 cases. (MP 28). The August 29, 2013 order directed Brown and Maney to provide the Court with monthly reports identifying no more than 13 cases with unresolved issues at the beginning of each month and giving Wroblewski until the end of each month to resolve issues in each of those cases. The order further directed that Wroblewski would be sanctioned $100 per case for each case not resolved at the end of each month with any sanctions incurred by Wroblewski to be paid to the Arizona Foundation for Legal Services and Education. Those funds were, in turn, to be designated toward support of the Bankruptcy Court Self Help Center.

**August 20, 2013 Hearing[7]**

The Court held a status hearing on August 20, 2013. Counsel for Brown and for

---

[7] Smith Case, Docket 90 and MP 32.

Maney advised the Court that Wroblewski had not complied with several items identified in the Court's order concerning Wroblewski's unresolved cases. Wroblewski was 20 minutes late to the status hearing and testified as follows beginning at 2:15:47 pm:

| Judge | Mr. Wroblewski, would you please come up to the podium. First of all I'd like to hear why it is we started a 1:30 hearing and you didn't come in until about ten til two? |
|---|---|
| Wroblewski | Yeah, I'm sorry Judge. I was running behind. Um, I, um, called Mr. um Mr. Parilman to let him know and indicated that he would advise the court if the hearing was to begin ….. |
| Judge | This hearing was set in June and here we are in August. You had plenty of advance notice to get yourself ready for this hearing. |
| Wroblewski | I'm sorry Judge, I really am. |
| Judge | But it's a pattern Mr. Wroblewski, you're not |
| Wroblewski | [unintelligible] |
| Judge | You heard what Mr. Lieske had said about all of the different things that I ordered on June 27, I'm looking at the minute entry, and he walked right down through them and talked about all of the deficiencies and everything that you failed to do even though I set it out in black and white in a minute entry dated June 27. A signed order. |
| Wroblewski | With regard to being late. I've been on time the other |
| Judge | I'm sorry? |
| Wroblewski | I was early the last two settings. I'm sorry about arriving late today. |
| Judge | You were early at the prior hearings? |
| Wroblewski | Yes |

| Judge | You don't get awards for being early but you do get punished for being late though. |
|---|---|
| Wroblewski | Ok |
| Judge | You know how it goes. You've been a lawyer long enough. |
| Wroblewski | I thought you mentioned there was a pattern of that. I'm sorry. |
| Judge | Well there's a pattern of you not following through with what is required of you as a lawyer. As somebody who is authorized by the Bar to practice law in this state. |
| Wroblewski | Ok |
| Judge | That is part of why you are in trouble with the State Bar. And the report that you were supposed to give me wasn't "hey, its continued to another date." The report was supposed to be "tell me what's going on down there" and we did not get that at all. |
| Wroblewski | So my |
| Judge | So tell me what's going on with the State Bar and your |

Wroblewski informed the Court he had very limited resources to pay the sanctions requested by Brown and Maney.

**October 24, 2013 Hearing[8]**

The Court held a status hearing on October 24, 2013, related to the Leland W. and Cynthia M. Martin ("Martin") bankruptcy (Case No. 2:10-bk-25145-DPC) ("Martin Case"). Brian Holohan ("Holohan"), counsel for Wroblewski in the Bar disciplinary proceeding, advised the Court that a settlement has been reached in the Martin case. The overall status of the Wroblewski matters were discussed and the Court directed Holohan

---

[8] Martin Case, Docket 97 and MP 56.

8

to file a motion for Wroblewski to withdraw as counsel in all chapter 13 cases handled by the Wroblewski Firms.  (Martin Case, Docket 97 and MP 56).

**November 21, 2013 Hearing[2]**

At the status hearing on November 21, 2013, Holohan advised the Court that the Wroblewski Firms had filed bankruptcy ("Wroblewski Bankruptcy Cases").  Holohan also informed the Court that Wroblewski had not filed motions to withdraw as directed by the Court at the October 24, 2013 hearing.  Holohan informed the Court of the status of the Bar's disciplinary proceeding and indicated Wroblewski had been locked out of his office by the chapter 7 trustees for the Wroblewski Bankruptcy Cases so he was unable to access his files.  Christopher Pattock ("Pattock"), counsel for the UST, discussed the lock-out and advised the Court that Wroblewski would be given access to the documents.  Lee informed the Court that the Bar had filed a motion for interim suspension of Wroblewski.

Given Wroblewski's inability or unwillingness to comply with the Court's orders, the Court directed the Clerk of the Bankruptcy Court to open the Miscellaneous Proceeding and transfer all docket entries related to the Wroblewski Firms from the Smith and Martin cases to the Miscellaneous Proceeding.  The Court further ordered that Wroblewski and the Wroblewski Firms be removed, disqualified or terminated from all bankruptcy cases in this District and that the Court would retain jurisdiction over the disgorgement issue brought by the UST and any other issues pertaining to Wroblewski. The Court set a continued hearing for December 17, 2013, where Wroblewski was to report on the magnitude of paid-for-but-unfiled chapter 7 cases and what notifications had been sent to these clients.  (Smith Case, Docket 118).

---

[9] Smith Case, Docket 118.

1    On November 26, 2013, the Court issued its order removing Wroblewski and the

2    Wroblewski Firms as counsel of record in all cases or proceedings pending within the

3    U.S. Bankruptcy Court for the District of Arizona. (MP 47).

4    After the hearing on November 21, 2013, and based upon information provided

5    by chapter 13 trustees Maney and Brown, the Court modified its August 29, 2013 order

6    and absolved the chapter 13 trustees of the earlier requirement to file monthly status

7    reports on Wroblewski related cases. The modified order did not, however, alter the

8    $4,400 of accumulated sanctions assessed against Wroblewski. (MP 63).

9    **December 17, 2013 Hearing[10]**

10   At the December 17, 2013 status hearing, Lee reported to the Court the status of

11   the Wroblewski disciplinary proceedings and the $112,966.10 cashier's check

12   Wroblewski removed from his Chase Bank IOLTA account and deposited in a Bank of

13   America IOLTA account ("BofA IOLTA Account") on December 11, 2013. (MP 68).

14   John Worth ("Worth"), counsel for the Bar, informed the Court of his client's intention

15   to bring a state court conservatorship action to take possession of Wroblewski's files and

16   deal with his clients' trust funds. In order to proceed as indicated, the Bar filed stay relief

17   motions in the Wroblewski Bankruptcy Cases. Lee informed the Court that Wroblewski

18   claimed to have converted the Chase Bank IOLTA trust funds into a cashier's check

19   because Wroblewski was concerned that those funds might be considered property of the

20   Wroblewski Bankruptcy Cases. Wroblewski maintained the funds were filing fees paid

21   to the Wroblewski Firms by its clients. Lane advised the Court that his clients would

22   stipulate to stay relief in favor of the Bar. Lane further reported to the Court that chapter

23   7 trustee Mullen had removed Wroblewski's personal computer and server from

24   Wroblewski's office. Lane indicated he met with Wroblewski and discussed the BofA

25

26   [10] Smith Case, Docket 124; MP 68.

IOLTA Account. Terry Dake ("Dake"), counsel for Mullen, advised the Court that his client also did not object to stay relief. Holohan discussed with the Court the $112,966.10 cashier check and explained why the funds were placed in the BofA IOLTA Account. Pattock addressed the UST's motion for disgorgement of attorney fees paid for cases not yet filed, whether the Court had jurisdiction over the unfiled cases, and the sale of the Phillips bankruptcy practice to Wroblewski. Randy Nussbaum ("Nussbaum"), counsel for Phillips, advised the Court that his client would provide all pertinent documents in his possession to the UST. (Smith Case, Docket 124 and MP 68).

**January 28, 2014 Hearing[11]**

At a January 28, 2014 continued hearing on the UST's motion for Wroblewski to disgorge attorneys' fees, the parties discussed discovery and the documents the UST requested from Phillips. Lee discussed the Bar proceeding as it related to Hoffbauer and that a form of order was submitted to disciplinary Judge O'Neal regarding Hoffbauer's ability to continue practicing bankruptcy law. Lee noted Wroblewski was on interim probation. Lane advised the Court that Wroblewski appeared at his Bankruptcy Rule 2004 exam on January 16, 2014. Lane also discussed possibly consolidating the Wroblewski Bankruptcy Cases. Holohan advised the Court that the $112,996.10 held in Wroblewski's BofA IOLTA Account were strictly filing fees and not attorneys' fees. (MP 72).

On March 12, 2014, Holohan filed a motion to withdraw as counsel for Wroblewski (MP 78) which motion was granted on March 24, 2014. (MP 86).

**March 13, 2014 Hearing[12]**

On March 13, 2014, the Court held another continued status hearing concerning the UST's motion to require Wroblewski to disgorge attorneys' fees. Lee discussed

---

[11] MP 72.
[12] MP 82.

discovery requests sent to Phillips and Wroblewski. Lee also noted Hoffbauer reached a consent agreement with the Bar which placed Hoffbauer on interim probation and barred him from participating in the bankruptcy practice without permission from the Bankruptcy Court. Patricia Sallen ("Sallen"), counsel for the Bar, informed the Court of the Bar's intention to file a conservatorship action involving the Wroblewski Firms. Wroblewski advised the Court that the IOLTA funds had been deposited at Bank of America and that he had been advised not to make any disbursements from the BofA IOLTA Account. Wroblewski informed the Court that many of his clients' bankruptcy fees were paid to Phillips' law firm. Wroblewski informed the Court that the trust account records were contained on the server in Lane's possession. Wroblewski confirmed he is the lone signer on the newly established BofA IOLTA Account. The Court ordered Wroblewski to file a motion in the Miscellaneous Proceeding identifying the clients entitled to a refund from the BofA IOLTA Account and the refund amount. (MP 82). The Court further ordered Wroblewski that he was not to make any distributions from the BofA IOLTA Account until further order of the Court. (MP 82). Wroblewski informed the Court that he would be representing himself and did not intend to file a personal bankruptcy. (MP 82).

On May 19, 2014, Wroblewski filed a motion to allow disbursement of funds held in the BofA IOLTA Account ("Disbursement Motion"). (MP 87). The Disbursement Motion consisted of two sentences and did not contain the detailed information ordered by the Court at the March 13, 2014 hearing. Wroblewski failed to attach the list of clients referenced in the second sentence of the Disbursement Motion.

**May 19, 2014 Hearing[13]**

On May 19, 2014, the Court held a continued hearing on the UST's motion for

---

[13] MP 90.

1    Wroblewski to disgorge attorneys' fees.  Jennifer Giaimo ("Giaimo"), counsel for the

2    UST, advised the Court that Pattock was waiting for additional documents from

3    Wroblewski and that, in light of an action to be filed by Donald L. Gaffney ("Gaffney"),

4    Pattock requested that the Court set a continued hearing sometime after July 22, 2014.

5    Gaffney discussed Wroblewski's Disbursement Motion and argued that Wroblewski had

6    the obligation to provide effective notice to his clients.  Gaffney suggested that the only

7    way to accomplish such notice would be through a television advertisement, similar to

8    the T.V. ads which brought bankruptcy clients to Phillips and Wroblewski in the first

9    place.  Lane indicated to the Court his belief that Wroblewski's Disbursement Motion

10   was inadequate.  Sabo and Lieske both agreed Wroblewski needed to amend his

11   Disbursement Motion with detailed information such as case number and chapter for each

12   client matter referred in the Disbursement Motion.  Wroblewski suggested that addresses

13   be obtained from the server in Lane's possession.  Wroblewski further requested that the

14   Court provide him with clarification on his responsibilities beyond what the Court had

15   already ordered relative to the BofA IOLTA Account.  Lee discussed the process to

16   refund filing fees back to Wroblewski's clients and that he may be able to cross-reference

17   with the Bar records.  Nussbaum expressed the need for confidentiality and indicated he

18   would gather the requested information from Phillips.  The Court ordered Phillips to file

19   a list of all trust clients and trust dollars transferred by Phillips to Wroblewski and to file

20   a list of all names and addresses of clients who may have claims against the Phillips

21   and/or the Wroblewski Firms.  The Court ordered Wroblewski to amend the

22   Disbursement Motion and file it with the Court no later than June 16, 2014.[14]  The Court

23   further ordered Wroblewski to file a global list and report of all potential consumer

24

25   _____
     [14] Wroblewski later sought and received an extension of the deadline to file his motion allowing disbursement of
     the trust funds. *See* MP 94 & 99. The order granting the request directed Wroblewski to be certain that the amended
26   motion ". . . contained full and complete information concerning the funds held in trust."

creditors in the Phillips and Wroblewski Bankruptcy Cases.

**Trustee's June 18, 2014 Status Report and Wroblewski's Disbursement Motions[15]**

On June 16, 2014, Wroblewski filed a second motion to allow disbursement of funds held in the BofA IOLTA Account ("Second Disbursement Motion"). (MP 96). That motion was not an "amended" motion, it did not comply with the Court's order and it consisted of two sentences which provided no detail whatsoever.

On June 18, 2014, the chapter 7 trustee Goernitz, joined by chapter 13 trustees Brown and Maney, filed a status report concerning Wroblewski's amended Disbursement Motion. (MP 98 and DE 91). The Trustees' status report indicated that Wroblewski's draft amended Disbursement Motion lacked adequate detail and that Wroblewski failed to comply with the Court's order to use his "best efforts" to (1) compile a list of clients whose funds were on deposit in the BofA IOLTA Account, (2) obtain addresses for Wroblewski's clients and provide detailed information on when they paid the funds and what the payment was for, (3) whether any clients had claims in the pending Phillips or Wroblewski Bankruptcy Cases, and (4) prepare and file a list of all potential consumer creditors in these bankruptcy cases. Goernitz further reported that Wroblewski had failed to take advantage of the trustee's open invitation to access the computer files in order to compile the information which the Court ordered Wroblewski to produce.

On June 24, 2014, Wroblewski filed a third "motion to allow disbursement of funds held in trust" ("Third Disbursement Motion") under seal. (MP 101). The Third Disbursement Motion provided more detail and contained a list of some clients who were entitled to a refund from the BofA IOLTA Account. The list contained a total of 384 clients with refunds totaling $114,512. On July 31, 2014, the UST filed a response to Wroblewski's Third Disbursement Motion stating that it was deficient because

---
[15] MP 98; DE 91.

Wroblewski failed to (1) disclose the total amount of funds on hand in the BofA IOLTA Account, (2) state whether he had current addresses for the list of clients, (3) disclose the amount of funds he proposed to pay each of the clients on the list, (4) disclose to whom the funds were initially paid, (5) disclose the dates the funds were paid, (6) commit to provide proof of payment to the court after funds disbursed, (7) propose how returned funds should be handled, and (8) provide a certificate of mailing of the Third Disbursement Motion.  (MP 105).

**August 5, 2014 Hearing[16]**

On August 5, 2014, the Court held a status hearing on Wroblewski's Third Disbursement Motion and Goernitz' request to establish a claims bar date.  (MP 107 and DE 115).  Gaffney advised the Court that an adversary proceeding would be filed and requested that the Court stay the UST's motion to disgorge Wroblewski's attorneys' fees. Lane discussed the need to expand the list of potential claimants to receive notice of a claims bar date before setting a claims bar date in the Wroblewski Bankruptcy Cases. Lane indicated he was looking for a list of bankruptcy and criminal clients of Phillips and a list of bankruptcy and criminal clients of Wroblewski after the transfer from Phillips to Wroblewski.  The Court directed Lane to review the lists filed by Phillips under seal at MP 91 and 93.  Lane advised the Court that it was his understanding Wroblewski was working to obtain current addresses on clients whose funds were held in the BofA IOLTA Account.  At the hearing, the Court heard extensive discussion on which parties would receive notice, how notice would be given, and who would bear the cost of such noticing. The Court vacated its prior order setting a claims bar date.  Wroblewski appeared at the hearing and requested a continuance on his Third Disbursement Motion.

. . .

---

[16] MP 107; DE 115.

**October 6, 2014 Hearing**[17]

On October 6, 2014, the Court held a continued status hearing on the Third Disbursement Motion, the UST's motion to disgorge Wroblewski's attorneys' fees, the Bar issues, and discovery issues concerning Phillips. (MP 108 and DE 130). Lane advised the Court he intended to file an application to employ Gaffney and his firm as special counsel to pursue claims against Phillips, Wroblewski and others. Gaffney indicated to the Court that a class action had not yet been filed and discussed with the Court Snell & Wilmer and Diane Drain ("Drain") acting as special counsel in filing an adversary proceeding. The Court questioned Gaffney about Wroblewski's time records and what information could be extracted from those records. Gaffney indicated Snell & Wilmer was working on updating the software necessary to access those records and reviewing the time keeping system. Wroblewski noted that once data was extracted from the time system he would have the last known addresses for those individuals whose funds were held in the BofA IOLTA Account. The UST agreed to hold in abatement their motion to disgorge Wroblewski's attorneys' fees in order to see what happened with various actions pending in these bankruptcy cases and other related cases. Sallen reviewed the Bar's conservatorship matter and indicated to the Court that the Bar was trying to make room for storage of the Wroblewski Firms' files. Nussbaum addressed ethical issues concerning the Court's request that Phillips turn over a client list. Phillips brought in Mark I. Harrison ("Harrison"), an ethics specialist, of the Osborn Maledon law firm, to work with Phillips to mitigate any ethical problems if he turned over his client list. After a considerable amount of investigation and analysis, Harrison contacted the Bar and is awaiting an advisory opinion. Stephen M. Dichter ("Dichter"), another attorney for Phillips, discussed with the Court his concern regarding Gaffney's

---

[17] MP 108; DE 130.

representation of Glenn and Estrela Wilkinson ("Wilkinsons"), former clients of Wroblewski who hold a claim against the WA bankruptcy estate, and chapter 7 trustee Goernitz. Wroblewski stated that Harrison had also represented him and that he had emailed Harrison to remind him that he had rescinded his waiver of conflict of interest.

**Wroblewski's December 9, 2014 Correspondence[18]**

On December 9, 2014, Wroblewski submitted correspondence to the Court stating he paid the remaining balance of the $4,400 sanction to the Arizona Bar Foundation and attached a copy of the cashier's check as proof of that payment. Wroblewski further stated he still did not have access to the data on the server in order to obtain the last known addresses for the clients whose funds were held in the BofA IOLTA Account. (MP 113).

**December 11, 2014 Hearing[19]**

On December 11, 2014, the Court held a continued status hearing on Wroblewski's Third Disbursement Motion, the UST's motion to disgorge Wroblewski's attorneys' fees, the Bar issues, and discovery issues concerning Phillips. (MP 115 and DE 155). Lane advised the Court that the Adversary Proceeding (discussed below) was being held in abeyance pending settlement discussions. Lane further advised the Court he reviewed Wroblewski's December 9, 2014 correspondence in which Wroblewski indicated he did not have access to Wroblewski Bankruptcy Cases' server. Lane indicated he would file a report and accounting of funds received by the chapter 7 trustees from the chapter 13 trustees.

Gaffney discussed the lengthy complaint filed under seal at adversary case number 2:14-ap-00864-DPC ("Adversary Proceeding") and advised the Court that a settlement offer had been received. Gaffney advised the Court that Wroblewski stored client files

---

[18] MP 113.
[19] MP 115; DE 155.

in three storage units and that Snell & Wilmer advanced funds to maintain those storage units. Gaffney stated that the bulk of the files he had seen were for the years 2010 and forward. Gaffney's office set up a server and made that server available to Wroblewski in June 2014. Wroblewski stated that he had contacted Gaffney's office in June and that he would communicate with Gaffney today to set a date and time to access the server. Wroblewski further indicated he did not believe there would be a problem with the BofA IOLTA Account client list as it is very limited. Wroblewski voiced his concern regarding obtaining the global clientele list by January 21, 2015 and that he would require the assistance of Gaffney's office. The Court ordered Wroblewski to contact Gaffney and identify what assistance he would require to access the server. The Court directed Wroblewski to provide a report of his progress at the January 21, 2015 hearing. Sallen discussed the status of the Bar matters and acknowledged that Gaffney had accurately described the status of the Wroblewski Firms' files. She further advised the Court that the Bar had not filed the conservatorship action and that some of the pressure was relieved now that Gaffney was taking control of the files. Sallen discussed her concerns regarding disclosure of the BofA IOLTA Account clients and suggested the list be filed under seal with limited access given. Lee advised the Court that the Bar intended to file a motion to unseal the complaint and to seek access to Wroblewski's server and hard drive. Lee further advised the Court he communicated with Gaffney concerning the names of clients previously represented by Phillips and Wroblewski and that he would provide a list to Gaffney of public complainants' names and charges. Gaffney stated he would allow access of the server to the Bar by stipulation but he would oppose a formal motion to unseal the complaint. The Court directed the Clerk's office to place Wroblewski's Third Disbursement Motion under seal as well as any future client lists filed by Wroblewski or Phillips. The Court excused the chapter 13 trustees from participating in further

proceedings. The Court gave Wroblewski until December 21, 2014 to contact Gaffney to make arrangements to access the server and begin extracting his clients' information. The Court further ordered Wroblewski to file, at a minimum, the BofA IOLTA Account payee list and amounts to be reimbursed to those clients. The Court ordered attorney Derek Judd ("Judd"), counsel for Phillips, until January 20, 2015 to file a status report on the list of Phillips files transferred to Wroblewski or, in the alternative, file the completed list.

**January 21, 2015 Hearing[20]**

On January 21, 2015, the Court held a continued status hearing on Wroblewski's Third Disbursement Motion, the Bar issues and discovery issues concerning Phillips. (MP 118 and DE 159). Gaffney informed the Court that Wroblewski and his wife had visited his office on January 15, 2015, to access the server. Gaffney noted that a portion of the hard drive is locked and two Quick Books programs are inaccessible. He advised the Court that Dichter's firm was attempting to decrypt the program. Lane addressed continuing issues regarding the BofA IOLTA Account payee list and the list of Phillips' files transferred to Wroblewski. Attorney Warren J. Stapleton ("Stapleton"), of the Osborn Maledon law firm, as co-counsel for Phillips, advised the Court he had no objection to any party filing a response to Phillips' position statement and proposed that the Court set a hearing on the disqualification motion prior to hearing the position statement issue. Sallen discussed the position statement filed on behalf of Phillips and the reference made to the advisory letter to Harrison and stated she had not yet reviewed the statement and therefore could not comment on the matter. Gaffney stated he was hopeful a consensual order would be reached based on the joint memorandum and, if not, he would file a motion to disqualify Osborn Maledon. Lee provided the Court with an

---

[20] MP 118; DE 159.

update on the disciplinary proceedings against Wroblewski.  The Bar was directed to complete their screening investigations into the outstanding charges against Wroblewski. Lee advised the Arizona Superior Court Probable Cause Committee had reviewed a report involving 141 separate clients and that the Bar had received a probable cause order. Lee anticipated filing a supplemental complaint with the disciplinary clerk.  Sallen advised that the Bar was continuing to safeguard the Wroblewski Bankruptcy Cases' files at the one remaining storage facility.  Attorney Tami Johnson ("Johnson"), the Bankruptcy Court's pro se law clerk and director of the Court's Self Help Center, advised the Court that the Clerk's office generated an ECF report that was emailed to the parties. Johnson also stated that she is putting together a list of approximately 150 individuals who have contacted the Self-Help Center and whose cases had not been filed by Wroblewski.  The Self-Help Center is attempting to contact those individuals and obtain their permission to provide their names and addresses to chapter 7 trustee Goernitz. Wroblewski advised the Court that he filed a letter to address the issue of the server and retrieval of client data.  *See* MP 117.

**July 23, 2015 Hearing[21]**

On July 23, 2015, the Court held a continued status hearing on the Joint Memorandum (DE 186).  Lane addressed the lingering issue of the BofA IOLTA Account and distribution of those funds.  Lane suggested that Wroblewski request Court approval to allow a distribution to specific individuals and place that distribution list under seal.  Wroblewski indicated to the Court that it is not a matter of making pro rata distributions and that the Court could enter an order directing disbursement of the BofA IOLTA Account funds to those individuals in the amounts to be identified by him. Wroblewski advised the Court that there was $114,520.00 in the IOLTA Account and

---

[21] DE 186.

approximately $15,000.00 could be promptly disbursed. Lee updated the Court on the status of the Bar disciplinary litigation involving Wroblewski and requested that he receive a list of the names and amounts to be disbursed from the BofA IOLTA Account. Lee indicated he would ask the disciplinary judge to keep the IOLTA information confidential. Lane agreed with Lee's suggested procedure. The Court directed Lane to prepare and file under seal a form of order allowing distribution to those individuals on the list.

**August 27, 2015 Distribution Order[22]**

On August 27, 2015, the Court entered an under seal Order on Trustee's Motion to Distribute Funds held in the BofA IOLTA Account ("Distribution Order"). (DE 190). Wroblewski was authorized and directed to distribute $12,897.00 from the BofA IOLTA Account to the parties and amounts identified on the list attached to the Distribution Order within ten days of entry of the Distribution Order.

**September 15, 2015 Hearing[23]**

The Court held a hearing on September 15, 2015, on settlements including a settlement between the Trustees and Wroblewski (DE 194). Under the Wroblewski settlement, Wroblewski (or his insurance carrier), was to pay the Trustees $100,000. The Court approved the settlement agreement (DE 214). The Court questioned Wroblewski as to the progress of the BofA IOLTA Account funds, and whether Wroblewski had identified the remaining individuals to receive distributions of funds held in the BofA IOLTA Account. Wroblewski stated that the initial distribution was just shy of $13,000 and that he had filed a notice of compliance of distribution. See DE 204. Wroblewski stated he needed to go back to the Self Help Center and cross check some of the names because in some cases his list only identified the wife client but not her husband.

---

[22] DE 190.
[23] DE 215.

Case 2:13-bk-19856-DPC    Doc 509   Filed 05/02/17   Entered 05/02/17 15:38:21   Desc
Main Document    Page 21 of 39

Wroblewski advised the Court that the beginning balance in the BofA IOLTA Account was $114,520 and that approximately $13,000 had been distributed leaving a balance of approximately $101,000. The Court inquired as to the remaining balance and what progress had been made by Wroblewski to identify the rightful recipient of such funds. Wroblewski stated he had not been able to make any additional progress due to his Bar disciplinary trial. Wroblewski further stated the need to access the Wroblewski Bankruptcy Cases' server in order to compile a complete list of individuals to receive a refund. Wroblewski further stated no progress had been made to access the time keeping program on the server and that the cost to do so would be approximately $10,000 to $15,000 to hire a computer expert. Gaffney addressed the status of hiring an expert to access Wroblewski's time keeping program on the server and the prohibitive cost with no guaranty of success. Gaffney further discussed Wroblewski Bankruptcy Cases' files held in three difference storage units, one of which was shut down, a second which was locked and paid for by the Bar, and a third which he was under the impression was either paid for by the Phillips firm or the Bar. Gaffney was surprised to discover that payment for the third storage unit was in default. Gaffney stated he arranged to rent space with his firm's landlord at a low cost in order to store the files held at the third storage unit and that this would cut down on storage costs. Gaffney indicated once the files were moved he could then have someone go through the files to obtain the necessary information to compile the list of names, addresses and amounts to be refunded instead of expending a large amount of money on a computer expert to gain access to the financial information located on the server. Wroblewski argued there may ultimately be a need to access the financial information on the server due to disclosure issues. The Court also questioned Wroblewski about the Bar disciplinary proceeding. Wroblewski stated the trial had taken place and closing statements were to be submitted to the Court. The Court

1  set a continued status hearing for January 11, 2016.

2  **The Court's October 7 and 16, 2015 Orders[24]**

3       On October 7, 2015, the Court granted Lee access to Wroblewski's Third
4  Disbursement Motion filed under seal.  (DE 223).

5       On October 16, 2015, the Court entered an order denying Wroblewski's
6  emergency request to stay the Bar proceedings pending before the State's presiding
7  disciplinary judge.  The Court further ordered that it would retain exclusive jurisdiction
8  concerning the validity and enforceability, as a matter of contract law, of the
9  Phillips/Wroblewski Stock Purchase Agreement.  (MP 127).

10 **February 18, 2016 Hearing[25]**

11      Upon request of the Debtor, the January 11, 2016 hearing was vacated and
12 rescheduled to January 27, 2016.  (DE 248).  The January 27, 2016 was subsequently
13 vacated and rescheduled to February 9, 2016.  (DE 250).  The February 9, 2016 hearing
14 was vacated and rescheduled to February 18, 2016.  (DE 264).  On February 18, 2016,
15 the Court held a status hearing on the BofA IOLTA Account, Bar proceedings, and the
16 Phillips discovery issues.  (DE 269).  Lane advised the Court of the partial distribution
17 made by Wroblewski and that only two checks had cleared the BofA IOLTA Account.
18 Wroblewski stated he had accumulated approximately 60% of the remaining client
19 addresses needed and would provide those to Lane.  Wroblewski requested an additional
20 60 days to locate the remaining client names and addresses.  Lee advised the Court that
21 the Bar had no intention at this point of assuming the BofA IOLTA Account and that it
22 was Wroblewski's responsibility to disburse funds to his former clients.

23 . . .

24 . . .

25
---
[24] DE 223; MP 127.
26 [25] DE 269.

The Court gave Wroblewski until April 18, 2016, to submit a request for issuance of an order relating to the notice to be given to the BofA IOLTA Account clients. (DE 269).

**May 26, 2016 Hearing[26]**

The April 25, 2016 status hearing on the BofA IOLTA Account and Bar matters was rescheduled to May 26, 2016. (DE 271). The Court held a status hearing on May 26, 2016, on the BofA IOLTA Account and Bar proceeding. (DE 307). Wroblewski advised the Court he consulted with Lane and a supplement to the motion to disburse needed to be filed. Lane said he would give Wroblewski until June 3, 2016 to file a supplement and urged the Court to direct Wroblewski to file a report concerning the funds that have already been distributed and cleared.

**Wroblewski's June 16, 2016 Supplement to Third Disbursement Motion[27]**

On June 16, 2016, Wroblewski filed under seal a supplement to his Third Disbursement Motion ("Supplemental Disbursement Motion") (DE 321). On June 1, 2016, Lane filed a response on behalf of Goernitz (DE 320) stating, among other things, the Supplemental Disbursement Motion was cumbersome, deficient, and contained inaccurate totals. Furthermore, Lane had attempted to contact Wroblewski on several occasions without success. Lane stated that Wroblewski's handling of client trust funds had been disgraceful and that his delays and failures to comply with court orders to return the client funds had caused unnecessary administrative burden on the Wroblewski Bankruptcy Cases.

**June 21, 2016 Stipulated Disbursement Order[28]**

Wroblewski uploaded a form of order approving the Supplemental Disbursement

---

[26] DE 307.
[27] DE 321.
[28] DE 325.

Motion. Goernitz filed a response and requested that the Court disregard Wroblewski's form of order and allow Goernitz to submit a proposed form of order (DE 320). On June 21, 2016, Goernitz and Wroblewski entered into a stipulated order regarding distribution from the BofA IOLTA Account. (DE 325). The order ("Second Disbursement Order") authorized Wroblewski to distribute the remaining $101,322 to the 340 former clients not included in the August 27, 2014 order and directed Wroblewski to provide a report to Goernitz to be reviewed prior to filing with the Court. The report was to include copies of all canceled checks from the initial distribution and the stipulated disbursement order, and copies of all statements from the BofA IOLTA Account from August 1, 2015 through September 30, 2016. The Court ordered that the report be filed by Wroblewski on or before October 31, 2016.

**October 18, 2016 Hearing[29]**

The Court held a status hearing on October 18, 2016, on the chapter 7 trustees' motion to establish a claims bar date. (DE 348). Wroblewski did not appear at this hearing. Lane advised the Court of, among other things, the fact that he had received an email from Wroblewski stating that Wroblewski needed additional time to distribute the funds from the BofA IOLTA Account and to file a report of distribution pursuant to the Second Disbursement Order. Attorney Charles Wirken ("Wirken"), appeared in his capacity as of the Chair of the Board of Trustees for the State Bar's Client Protection Fund and indicated he had communicated with Lane, showing him the list of claimants and amounts they had been paid from the Client Protection Fund.

**November 8, 2016 Hearing[30]**

On October 19, 2016, the Court entered an order to show cause ("2nd OSC") directing Wroblewski to appear on November 18, 2016, and show cause why he should

---

[29] DE 348.
[30] DE 384.

1  not be held in contempt for failure to abide by Second Disbursement Order. (DE 350).

2  Wroblewski failed to appear at the November 8, 2016 hearing on the 2nd OSC. Lane

3  advised the Court that he had not heard from Wroblewski. Lane further advised the Court

4  that the decision to disbar Wroblewski had been overturned and that the Bar and

5  Wroblewski were working on a stipulation. Lane made an oral motion requesting the

6  Court direct the bank to allow the trustee unfettered access to the IOLTA Account. The

7  Court ordered that Wroblewski be held in contempt of court for failing to appear at the

8  November 8, 2016 hearing, and for his failure to abide by the Second Disbursement

9  Order. The Court granted Lane's oral motion and directed the bank to allow the chapter

10  7 trustee unfettered access to Wroblewski's IOLTA Account. (DE 384).

11  **The Revelation of Wroblewski's Appropriation of the BofA IOLTA Account Funds**

12  On November 10, 2016, Lane filed an Affidavit in support of order regarding

13  IOLTA Account of Wroblewski. (DE 378). After the hearing on November 8, 2016,

14  Lane discovered Wroblewski had moved the IOLTA Account from Chase Bank to Bank

15  of America on December 11, 2013. The Court entered an order on November 10, 2016,

16  authorizing Goernitz to take sole custody and control of any IOLTA accounts in the name

17  of Wroblewski on deposit with Bank of America. (DE 381). The order further authorized

18  Goernitz to obtain any documentation on IOLTA accounts in Wroblewski's name related

19  to accounts at Bank of America.

20  On December 2, 2016, Goernitz filed under seal copies of the bank statements and

21  canceled checks obtained from Bank of America. (DE 397). A summary of those

22  transactions revealed by the BofA statements is attached hereto as Exhibit 2. The BofA

23  IOLTA Account statements reveal that, between the dates of September 28, 2015, and

24  October 28, 2015, Wroblewski returned $10,769.00 of trust funds to his consumer clients

25  (DE 412).

26

**December 15, 2016 Hearing**[31]

On December 6, 2016, the Court entered an order to show cause ("3rd OSC") directing Wroblewski to appear on December 15, 2016, and show cause why he should not be held in contempt for inappropriate or illegal appropriations of the funds in the BofA IOLTA Account. (DE 398). Wroblewski appeared at the December 15, 2016 hearing and indicated that he was due these funds since he had personally paid filing fees for these consumer clients:

| 3:24:29 | Wroblewski | Its, the IOLTA account was kind of a safe haven, uh, |
|---|---|---|
| | Court | Was that? Are you telling me that that's where you were stashing money that you tried to keep away from the IRS or from other creditors? |
| 3:24:43 | Wroblewski | Um, trying to? I didn't stash, I just didn't take money out. Um, so it, its, its, so that's where I use the word lazy not, so when, when filing fees were paid money wasn't correspondingly taken out of the IOLTA so you could go to you know, records downstairs and find you know, examples of um, of clients who the firm actually paid the filing, you know, the filing fee was paid. You know, but the um, the IOLTA uh wasn't taken out and so that, so it was a way that you know, for instance I would, I would make money and then for my, in 2013, and pay a filing fee and or a lump sum and the money would still in IOLTA and, and, it was kind of protected you know. Lazy, I again use the word because it was easy, convenient to say ok, just leave it, you know. Just not even, just ignore it, let it sit. And so, finally when we filed the bankruptcy um there's a lot of focus on the IOLTA and I guess I shouldn't have been surprised but um so there was an acknowledgement, personal acknowledgment that a um, you know, the people are owed their money. They're gonna get their money but the rest, you know, that, its, its just gonna be foregone. And, but then when it came down to uh. So I went two years after that point of just you know, living from month to month, whatever I could make, not touching into what you, what one might call a savings. Um, uh, then I uh, I became desperate and really you know, felt like, you know, the end is near. Um, and part of me felt well its rightfully mine but I don't know if I'll ever be able |

| | | to explain it, you know, later. And, um, to a large extent I believed I'd just wouldn't be around to have to explain it. And, but I'm still here. |

Wroblewski gave sworn testimony indicating that the IOLTA funds had not been distributed to former clients but had been taken by him personally in violation of the Court's previous orders:

| 3:59:29 | Court | You knew there was an order precluding you, preventing you, from touching any of these monies for any purpose unless you had another order of the Court, correct? |
|---|---|---|
| 3:59:38 | Wroblewski | That is correct, and I stated that before you questioned me. |
| 3:59:41 | Court | And secondly, that when you took money out of the account, over and over and over again, as reflected by this exhibit that I've handed to you, you were taking money out of the account knowing that you were violating a Court Order, correct? |
| 3:59:57 | Wroblewski | Judge, yes, and I already told you I was prepared to make admissions, the admissions in writing, so I guess you're the judge, you can decide how you want to do this but this is not necessary, I mean, I am prepared, I'm prepared to put in writing what had happened. |

The Court denied Wroblewski's oral motion to place the proceedings under seal.

**December 19, 2016 Contempt Order[32]**

On December 19, 2016, the Court entered its Contempt Order ("Contempt Order"). (DE 413). The Court found Wroblewski in contempt of court for his failure to abide by the Second Disbursement Order. The Court barred Wroblewski from engaging in any practice of bankruptcy law and forbade Wroblewski from appearing in bankruptcy court in this District to represent any clients without further order of the Court. The Court directed Wroblewski to file a response to the 3rd OSC no later than January 17, 2017. Wroblewski was directed to file a motion with the court 24 hours in advance of due dates if he needed additional time to respond or request a continuance of the February 14, 2017

---

[32] DE 413.

hearing. (DE 413, page 2). The February 14, 2017 hearing was continued to February 21, 2017

**Wroblewski January 17, 2017 Correspondence[33]**

Wroblewski sent correspondence to the Court dated January 17, 2017, which contained assertions that no one was harmed by his actions and that he needed access to records held by the Trustee. (DE 425). Wroblewski has been provided with the BofA IOLTA Account records. These records clearly demonstrate Wroblewski absconded with tens of thousands of dollars from the BofA IOLTA Account.

**Wroblewski February 6, 2017 Correspondence[34]**

On February 7, 2017, Wroblewski faxed correspondence to the Court's staff indicating he would not be able to attend the February 21, 2017 hearing. (DE 439). The Court continued the hearing to March 30, 2017.

**Goernitz's February 10, 2017 Status Report[35]**

Goernitz filed a Status Report regarding the Order to Show Cause on February 10, 2017. (DE 441). That Status Report indicating that in the overwhelming majority of the instances in which Wroblewski testified that he had filed bankruptcies for consumer debtors, no cases were filed in the District of Arizona for those individual consumer clients. From the list of 346 Wroblewski clients, Lane could only find 20 consumer debtors for whom cases had been filed in the District of Arizona (see Affidavit Regarding IOLTA Funds at DE 441, pp 5-8).

**March 30, 2017 Hearing[36]**

On March 30, 2017, the Court held a continued status hearing regarding the BofA IOLTA Account and 3rd OSC. A few hours before the hearing, in violation of the

---

[33] DE 425.
[34] DE 439.
[35] DE 441.
[36] DE 471.

Contempt Order, Wroblewski called the Court's staff prior to the hearing and indicated he was unable to attend. The Court's staff instructed Wroblewski to file a motion and Wroblewski indicated he did not have access to a fax machine. The Court staff instructed Wroblewski to appear telephonically and he indicated he would not have access to a phone at the time of the hearing. Wroblewski failed to appear at the hearing. The Court denied Wroblewski's ex parte oral request for a continuance. The Court placed its findings on the record and stated that the Contempt Order would stand.

Following the hearing, Wroblewski called the Court's staff and left two separate voicemail messages requesting information concerning the March 30, 2017 hearing. The Court subsequently entered an order requiring all future communications from Wroblewski be in writing and filed with the Clerk of the Court. (DE 474).

**Conclusion**

Records obtained by Goernitz establish that from October 16, 2015, through and including June 27, 2016, Wroblewski personally looted $103,430.00 in funds from the BofA IOLTA Account controlled by him. These withdrawals were in violation of this Court's orders, and the Arizona Supreme Court's rules governing a lawyer's handling of IOLTA funds controlled by Arizona lawyers. Wroblewski and Holohan told the Court these funds were paid to Wroblewski by clients as payment to the Bankruptcy Court once the Wroblewski Firms filed their bankruptcy cases. For over two years this Court ordered Wroblewski to properly account for the ownership of the IOLTA funds and then obtain the Court's order authorizing disbursement prior to payment of the funds to their rightful owners. The Court held many hearings addressing these funds, and Wroblewski filed numerous deficient motions regarding the repayment of the funds. A month after Lane obtained copies of the BofA IOLTA Account statements and delivered them to the Court,

Wroblewski confirmed, under oath, that he had looted the BofA IOLTA Account, claiming for the first time that the funds actually belonged to him. His testimony that the funds belong to him is not credible. Moreover, Wroblewski failed to supply any evidence that he filed any case for clients and paid filing fees for such clients, thereby entitling him to recover any filing fees from the BofA IOLTA Account.

BASED ON THE FOREGOING,

NOW, THEREFORE, IT IS HEREBY ORDERED:

A.     Holding David R. Wroblewski in contempt (1) for disobeying this Court's order that none of the IOLTA funds were to be distributed absent order of this Court, (2) for appropriating $103,430.00 of the IOLTA funds for his own use and purposes, and (3) for his failure to adequately explain his withdrawal of $103,430.00 from the BofA IOLTA Account;

B.     Holding David R. Wroblewski in contempt for violating the Stipulated Order (DE 350) and misrepresenting the facts related to the distributions and withdrawals from the BofA IOLTA Account; and,

C.     Ordering David R. Wroblewski to turnover to the State Bar of Arizona the amount of $103,430.00 within thirty (30) days after the entry of this Order.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Michael P. Lane
Lane & Nach, P.C.
2001 E. Campbell, Suite 103
Phoenix, AZ 85016

1  David Wroblewski
   P.O. Box 3505
2  Gilbert, AZ 85299

3  David Wroblewski
   1906 W. Aspen Ave.
4  Gilbert, AZ 85233

5  David Wroblewski
6  9837 E Inglewood
   Mesa, AZ 85207
7
   James Lee
8  State Bar of Arizona
9  4201 N. 24th St., Suite 100
   Phoenix, AZ 85016
10
   Donald L. Gaffney
11 Snell & Wilmer L.L.P.
   One Arizona Center
12 Phoenix, AZ 85004-2202

13
   Christopher J. Pattock
14 Office of the United States Trustee
   230 N. First Ave., Suite 204
15 Phoenix, AZ 85003

16
   Randy Nussbaum
17 Nussbaum Gillis & Dinner, P.C.
   14850 N. Scottsdale Rd., Suite 450
18 Scottsdale, AZ 85254

19
   Stephen M. Dichter
20 Christian Dichter & Sluga P.C.
   2700 N. Central Ave., Suite 1200
21 Phoenix, AZ 85004

22
   Diane L. Drain
23 2375 E. Camelback Rd., Suite 600
   Phoenix, AZ 85016-3493

24

25

26

## EXHIBIT 1

### Index of Parties and Lawyers

| Name | Role |
| --- | --- |
| Brown, Russell | Chapter 13 Trustee for the Bankruptcy Estate of Pamela K. Smith, Case No. 2:11-bk-12650-DPC |
| Dake, Terry A. | Attorney for Chapter 7 Trustee, Brian J. Mullen |
| David Wroblewski & Associates Law Center, P.C. | Debtor, Case No. 2:13-bk-19856-DPC |
| David Wroblewski & Associates Law Firm, P.C. | Debtor, Case No. 2:13-bk-19991-DPC |
| Farrington-Lorch, Mary | Attorney for Arizona Storage Inns |
| Gaffney, Donald L. | Attorney for former clients of Wroblewski and Phillips:<br>Glenn and Estela Wilkinson<br>Ajeo and Patricia Uribe<br>Suns Legacy Partners, LLC<br>SupreMedia, LLC f/k/a Idearc Media, LLC<br><br>Later:<br>Special Counsel for Chapter 7 Trustees, Lothar Goernitz and Robert A. MacKenzie |
| Giaimo, Jennifer | Attorney for United States Trustee |
| Goernitz, Lothar | Chapter 7 Trustee for bankruptcy estates of David Wroblewski & Associates Law Center, P.C., Case No. 2:13-bk-19856-DPC and Wroblewski & Associates Law Firm, P.C., Case No. 2:13-bk-19857-DPC |
| Hoffbauer, Ronald | Attorney – former associate of Wroblewski |
| Holohan, Brian | Former attorney for Wroblewski in Arizona State Bar disciplinary proceedings and for a brief time in Bankruptcy Court |

33

| | |
|---|---|
| Johnson, Tami | U.S. Bankruptcy Court Pro Se Law Clerk and Director of the U.S. Bankruptcy Court's Self Help Center |
| Judd, Derek | Attorney for Jeffrey Phillips |
| Lane, Michael P. | Attorney for Chapter 7 Trustee, Lothar Goernitz and Chapter 7 Trustee, Robert A. MacKenzie |
| Lee, James | Attorney for Arizona State Bar |
| Lieske, Scott | Former attorney for Chapter 13 Trustee, Russell Brown |
| MacKenzie, Robert A. | Chapter 7 Trustee for the Bankruptcy Estate of Phillips & Associates Law Offices, P.C., Case No. 2:12-bk-12434-DPC |
| Manera, S. William | Chapter 7 Trustee for the Bankruptcy Estate of Wroblewski & Associates, P.C., Case No. 2:13-bk-19931-DPC |
| Maney, Edward J. | Chapter 13 Trustee for the Bankruptcy Estate of Leland and Cynthia Martin, Case No. 2:10-bk-25145-DPC |
| Mullen, Brian J. | Chapter 7 Trustee for the Bankruptcy Estate of David Wroblewski & Associates Law Firm, P.C., Case No. 2:13-bk-19991-DPC |
| Nussbaum, Randy | Attorney for Jeffrey Phillips |
| Parilman, Joshua S. | Attorney – former associate of Wroblewski |
| Pattock, Christopher J. | Attorney for United States Trustee |
| Phillips & Associates Law Offices, P.C. | Debtor, Case No. 2:12-bk-12434-DPC |
| Phillips, Jeffrey | Principal of Debtor<br>-- Phillips & Associates Law Offices, P.C. |

34

| | |
|---|---|
| Sabo, Jessica | Former attorney for Chapter 13 Trustee, Edward J. Maney |
| Sallen, Patricia | Former attorney for Arizona State Bar |
| Stapleton, Warren J. | Attorney for Jeffrey Phillips |
| Wilkinson, Glenn and Estrela | Claimants in the Wroblewski & Associates, P.C. bankruptcy estate |
| Wirken, Charles | Chair of Board of Trustees of the State Bar Client Protection Fund |
| Worth, John | Attorney for Arizona State Bar |
| Wroblewski & Associates Law Firm, P.C. | Debtor, Case No. 2:13-bk-19857-DPC |
| Wroblewski & Associates, P.C. | Debtor, Case No. 2:13-bk-19931-DPC |
| Wroblewski, David R. | Principal of Debtors<br>--David Wroblewski & Associates Law Center, P.C.<br>--Wroblewski & Associates, P.C.<br>--Wroblewski & Associates Law Firm, P.C.<br>--David Wroblewski & Associates Law Firm, P.C.<br>--Sole signor on the BofA IOLTA Account |

35

EXHIBIT 2 - Wroblewski Iolta Account (4774) - Bank of America

| Date | Transaction Type | Transaction # | Payee/Payer | Notes | Withdrawal (Debit) | Deposit (Credit) | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | | $0.00 |
| 12/11/13 | Deposit | | | | | Beginning Balance | |
| | | | | | | $112,966.10 | $112,966.10 |
| 01/09/14 | Debit | | Check Order | Fee | $144.81 | | $112,821.29 |
| 02/21/14 | Withdrawal | | David Wroblewski | Skidmore Realty (Wroblewski Rent) | $2,536.50 | | $110,284.79 |
| 02/26/14 | Credit | | Deposit | | | $2,536.50 | $112,821.29 |
| 07/31/14 | Credit | | Deposit | | | $1,690.71 | $114,512.00 |
| 09/28/15 | Check | 2008 | Stephen & Suzanne Daly | Iolta Refund | $299.00 | | $114,213.00 |
| 09/28/15 | Check | 2009 | Amanda Dixon | Iolta Refund | $306.00 | | $113,907.00 |
| 09/28/15 | Check | 2015 | Tommie L. Gill | Iolta Refund | $306.00 | | $113,601.00 |
| 09/28/15 | Check | 2019 | Richard Huante | Iolta Refund | $175.00 | | $113,426.00 |
| 09/28/15 | Check | 2021 | Glenn & Beverly Kosierowski | Iolta Refund | $274.00 | | $113,152.00 |
| 09/28/15 | Check | 2023 | Robert & Pamela Lee | Iolta Refund | $299.00 | | $112,853.00 |
| 09/28/15 | Check | 2026 | Charles & Soila Mayer | Iolta Refund | $306.00 | | $112,547.00 |
| 09/28/15 | Check | 2034 | Kathleen Rhoten | Iolta Refund | $306.00 | | $112,241.00 |
| 09/28/15 | Check | 2041 | Gary & Sharon Van Gorder | Iolta Refund | $306.00 | | $111,935.00 |
| 09/28/15 | Check | 2042 | Janet D. Vargas | Iolta Refund | $299.00 | | $111,636.00 |
| 09/29/15 | Check | 2001 | Daniel & Cindy Ayrla | Iolta Refund | $306.00 | | $111,330.00 |
| 09/29/15 | Check | 2002 | Billy J. Ben | Iolta Refund | $306.00 | | $111,024.00 |
| 09/29/15 | Check | 2011 | Efrain & Rosa Espinoza | Iolta Refund | $299.00 | | $110,725.00 |
| 09/29/15 | Check | 2035 | Gabriel & Melanie Rojas | Iolta Refund | $299.00 | | $110,426.00 |
| 09/30/15 | Check | 2013 | Anita G. Ezcurra | Iolta Refund | $306.00 | | $110,120.00 |
| 09/30/15 | Check | 2037 | Jennifer E. Sifuentes | Iolta Refund | $306.00 | | $109,814.00 |
| 09/30/15 | Check | 2043 | Armando & Milagros Zaportez | Iolta Refund | $299.00 | | $109,515.00 |
| 10/01/15 | Check | 2028 | Angelica Mederos | Iolta Refund | $307.00 | | $109,208.00 |
| 10/01/15 | Check | 2029 | Brenda Orr | Iolta Refund | $299.00 | | $108,909.00 |
| 10/01/15 | Check | 2038 | Robert & Donna Sosenschein | Iolta Refund | $299.00 | | $108,610.00 |
| 10/02/15 | Check | 2006 | Gerald & Cynthia Cassebaum | Iolta Refund | $306.00 | | $108,304.00 |
| 10/05/15 | Check | 2010 | Fernando & Cathleen Duran | Iolta Refund | $299.00 | | $108,005.00 |

36

EXHIBIT 2 - Wroblewski Iolta Account (4774) - Bank of America

| Date | Transaction Type | Transaction # | Payee/Payer | Notes | Withdrawal (Debit) | Deposit (Credit) | Balance |
|---|---|---|---|---|---|---|---|
| 10/05/15 | Check | 2024 | Mario A. Licano | Iolta Refund | $299.00 | | $107,706.00 |
| 10/05/15 | Check | 2025 | Erick Masters | Iolta Refund | $299.00 | | $107,407.00 |
| 10/07/15 | Check | 2018 | Victor Hernandez & Laura Rueles | Iolta Refund | $306.00 | | $107,101.00 |
| 10/07/15 | Check | 2040 | Dorian & Amber Temple | Iolta Refund | $331.00 | | $106,770.00 |
| 10/09/15 | Check | 2003 | Ana Bonilla | Iolta Refund | $306.00 | | $106,464.00 |
| 10/09/15 | Check | 2031 | Deborah Pierce | Iolta Refund | $299.00 | | $106,165.00 |
| 10/13/15 | Check | 2017 | Sandra Harmon | Iolta Refund | $299.00 | | $105,866.00 |
| 10/13/15 | Check | 2022 | Dallas Lauritsen | Iolta Refund | $306.00 | | $105,560.00 |
| 10/13/15 | Check | 2032 | Don & Joann Pogue | Iolta Refund | $306.00 | | $105,254.00 |
| 10/14/15 | Check | 2020 | Jared C. Kartchner | Iolta Refund | $306.00 | | $104,948.00 |
| 10/15/15 | Check | 2030 | Ismael Perez | Iolta Refund | $300.00 | | $104,648.00 |
| 10/15/15 | Check | 2033 | Felemina Mary Pokoj | Iolta Refund | $306.00 | | $104,342.00 |
| 10/16/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $4,500.00 | | $99,842.00 |
| 10/26/15 | Check | 2014 | Brian Felker & Janet Armentani | Iolta Refund | $300.00 | | $99,542.00 |
| 10/28/15 | Check | 2012 | Lynn C. Eversley | Iolta Refund | $306.00 | | $99,236.00 |
| 10/28/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $2,000.00 | | $97,236.00 |
| 11/02/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $3,000.00 | | $94,236.00 |
| 11/06/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $500.00 | | $93,736.00 |
| 11/10/15 | Withdrawal | | Cash | Chandler & Alma School | $500.00 | | $93,236.00 |
| 11/13/15 | Withdrawal | | Cash | Chandler & Alma School | $1,000.00 | | $92,236.00 |
| 11/24/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $2,000.00 | | $90,236.00 |
| 12/01/15 | Withdrawal | | Cash | Gilbert & Guadalupe | $3,500.00 | | $86,736.00 |
| 12/15/15 | Withdrawal | | Cash | Chandler & Alma School | $2,000.00 | | $84,736.00 |
| 12/22/15 | Withdrawal | | Cash | Stapley & Baseline | $2,000.00 | | $82,736.00 |
| 12/23/15 | Withdrawal | | Cash | Gilbert & Warner | $1,000.00 | | $81,736.00 |
| 12/28/15 | Withdrawal | | David Wroblewski | 20th & Camelback | $27,100.00 | | $54,636.00 |
| 12/31/15 | Withdrawal | | Cash | Chandler & Alma School | $4,000.00 | | $50,636.00 |
| 1/12/16 | Withdrawal | | Cash | Chandler & Alma School | $1,500.00 | | $49,136.00 |
| 1/14/16 | Withdrawal | | Cash | Gilbert & Warner | $1,000.00 | | $48,136.00 |

37

| | | EXHIBIT 2 - Wroblewski Iolta Account (4774) - Bank of America | | | | |
|---|---|---|---|---|---|---|
| Date | Transaction Type | Transaction # | Payee/Payer | Notes | Withdrawal (Debit) | Deposit (Credit) | Balance |
| 1/15/16 | Withdrawal | | Cash | Santan Village | $1,500.00 | | $46,636.00 |
| 01/25/16 | Withdrawal | | Cash | Chandler & Alma School | $2,000.00 | | $44,636.00 |
| 01/29/16 | Withdrawal | | Cash | Gilbert & Germann | $1,000.00 | | $43,636.00 |
| 02/01/16 | Withdrawal | | Cash | Gilbert & Guadalupe | $2,500.00 | | $41,136.00 |
| 02/03/16 | Withdrawal | | Cash | Southern & McClintock | $3,000.00 | | $38,136.00 |
| 02/16/16 | Check | | Melanie L. Tapprich | Iolta Refund | $300.00 | | $37,836.00 |
| 02/19/16 | Withdrawal | | Cash | Gilbert & Warner | $1,500.00 | | $36,336.00 |
| 02/24/16 | Withdrawal | | Cash | Gilbert & Warner | $1,000.00 | | $35,336.00 |
| 03/01/16 | Withdrawal | | Cash | Gilbert & Guadalupe | $3,000.00 | | $32,336.00 |
| 03/04/16 | Withdrawal | | Cash | Gilbert & Warner | $1,500.00 | | $30,836.00 |
| 03/08/16 | Withdrawal | | Cash | Gilbert & Warner | $1,500.00 | | $29,336.00 |
| 03/11/16 | Withdrawal | | Cash | Gilbert & Warner | $1,500.00 | | $27,836.00 |
| 03/17/16 | Withdrawal | | Cash | Gilbert & Guadalupe | $1,000.00 | | $26,836.00 |
| 03/25/16 | Withdrawal | | Cash | Gilbert & Guadalupe | $1,000.00 | | $25,836.00 |
| 03/30/16 | Withdrawal | | Cash | Gilbert & Warner | $1,000.00 | | $24,836.00 |
| 04/01/16 | Withdrawal | | Cash | Chandler & Alma School | $2,000.00 | | $22,836.00 |
| 04/06/16 | Withdrawal | | Cash | Gilbert & Warner | $2,000.00 | | $20,836.00 |
| 04/08/16 | Withdrawal | | Cash | Chandler & Alma School | $2,000.00 | | $18,836.00 |
| 04/13/16 | Withdrawal | | Cash | Gilbert & Warner | $2,000.00 | | $16,836.00 |
| 04/25/16 | Withdrawal | | Cash | Gilbert & Warner | $500.00 | | $16,336.00 |
| 04/25/16 | Withdrawal | | David Wroblewski | Gilbert & Warner | $2,500.00 | | $13,836.00 |
| 04/28/16 | Withdrawal | | Cash | Gilbert & Warner | $2,800.00 | | $11,036.00 |
| 05/02/16 | Withdrawal | | Cash | Gilbert & Warner | $500.00 | | $10,536.00 |
| 05/04/16 | Withdrawal | | Cash | Gilbert & Warner | $500.00 | | $10,036.00 |
| 05/09/16 | Withdrawal | | Cash | Gilbert & Warner | $300.00 | | $9,736.00 |
| 05/09/16 | Withdrawal | | Cash | Chandler & Alma School | $500.00 | | $9,236.00 |
| 05/12/16 | Withdrawal | | Cash | Chandler & Alma School | $1,000.00 | | $8,236.00 |
| 05/16/16 | Withdrawal | | Cash | Gilbert & Warner | $600.00 | | $7,636.00 |
| 05/18/16 | Withdrawal | | Cash | Gilbert & Warner | $800.00 | | $6,836.00 |

# EXHIBIT 2 - Wroblewski Iolta Account (4774) - Bank of America

| Date | Transaction Type | Transaction # | Payee/Payer | Notes | Withdrawal (Debit) | Deposit (Credit) | Balance |
|---|---|---|---|---|---|---|---|
| 05/20/16 | Withdrawal | | Cash | Gilbert & Germann | $300.00 | | $6,536. |
| 05/23/16 | Withdrawal | | Cash | Gilbert & Warner | $500.00 | | $6,036. |
| 05/27/16 | Withdrawal | | Cash | Chandler & Alma School | $600.00 | | $5,436. |
| 05/31/16 | Withdrawal | | Cash | Gilbert & Warner | $2,200. | | $3,236. |
| 06/02/16 | Withdrawal | | Cash | Chandler & Alma School | $600.00 | | $2,636. |
| 06/06/16 | Withdrawal | | Cash | Gilbert & Guadalupe | $400.00 | | $2,236. |
| 06/08/16 | Withdrawal | | Cash | Gilbert & Warner | $400.00 | | $1,836. |
| 06/10/16 | Withdrawal | | Cash | Gilbert & Warner | $400.00 | | $1,436. |
| 06/13/16 | Withdrawal | | Cash | Gilbert & Warner | $400.00 | | $1,036. |
| 06/16/16 | Withdrawal | | Cash | Gilbert & Warner | $300.00 | | $736.00 |
| 06/20/16 | Withdrawal | | Cash | Gilbert & Warner | $200.00 | | $536.00 |
| 06/22/16 | Withdrawal | | Cash | Gilbert & Warner | $200.00 | | $336.00 |
| 06/24/16 | Withdrawal | | Cash | Gilbert & Warner | $200.00 | | $136.00 |
| 06/27/16 | Withdrawal | | Cash | Gilbert & Warner | $130.00 | | $6.00 |
| 09/29/16 | Credit | | Deposit | | | $200.00 | $206.00 |
| 10/07/16 | Credit | | Deposit | | | $94.00 | $300.00 |
| 11/04/16 | Check | 2450 | Jill H. Ford, Trustee | Alfred & Natividad Martinez | $299.00 | | $1.00 |

$117,487.31

39